**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

MARCOS DEVON BRYANT,          )
                              )
            Petitioner,       )
                              )
       v.                     )          1:10CV482
                              )
ALVIN W. KELLER, JR.,         )
                              )
            Respondent.       )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On February 13, 2008, in the Superior Court of Forsyth County, a jury found Petitioner guilty of two counts of first-degree murder in cases 06 CRS 51583 and –51584. (Docket Entry 1, ¶¶ 3, 4.) He received a sentence of life in prison without the possibility of parole. (<u>Id.</u> ¶ 4.)

Petitioner thereafter pursued a direct appeal with the North Carolina Court of Appeals in which he raised two issues: 1) whether the trial judge erred in failing to give a jury instruction pertaining to voluntary manslaughter based on imperfect self-defense; and 2) whether the trial judge erred in denying a motion to suppress rap lyrics found in a notebook seized during a search of Petitioner's automobile. <u>State v. Bryant</u>, 196 N.C. App. 155, 157, 158, 674 S.E.2d 753, 755, 756 (2009). Upon denial of that appeal, Petitioner petitioned for discretionary review in the North Carolina Supreme Court only as to the suppression issue. (Docket

Entry 5, Ex. 5.)  The North Carolina Supreme Court declined review.
State v. Bryant, 363 N.C. 375, 679 S.E.2d 135 (2009).

Petitioner did not appeal further or seek collateral review in the state courts.  (Docket Entry 1, ¶ 13.)  Instead, he filed his Petition in this Court seeking habeas relief based on the same two claims he raised in the North Carolina Court of Appeals on direct appeal.  (Id. ¶¶ 14, 16.)  Both Respondent and Petitioner have moved for summary judgment.  (Docket Entries 4, 10.)

## Background

The North Carolina Court of Appeals described the relevant historical and procedural facts as follows:

> On 16 January 2006, at about 2:30 a.m., William Chavis Miller (Miller) fired approximately twenty rounds from an AK-47 assault rifle into the residence occupied by Marcos Devon Bryant (defendant) and others in Winston-Salem. No one was injured by the shooting. Defendant's roommate identified Miller as the shooter. Miller subsequently acknowledged that he was the perpetrator of the shooting to several people. The motivation for the shooting is not clear from the record.

> On the morning after the shooting, defendant stated that "I got to get him" and "he was sending for his chopper." On 16 January 2006, defendant traveled to Loris, South Carolina, where he purchased a MAK-90 assault rifle. On 17 January 2006 at 8:18 p.m., defendant purchased four or five boxes of 7.62 mm. ammunition at a Wal-Mart in Winston-Salem. The ammunition was three boxes of Winchester Brand and possibly one box of Remington Brand. Defendant worked at the Wal-Mart. At about 11:15 p.m. on 17 January 2006, defendant called Miller and told him that he wanted to "squash the beef before somebody got hurt." He also offered to sell Miller some athletic shoes and some marijuana. Defendant called Miller again at about 11:40 p.m. and told him to meet him at the intersection of First and Lowery. Defendant picked up "Turk" Perry (Perry) and Brandon Staton (Staton), who accompanied defendant to the meeting. Defendant was armed with his MAK-90, and Perry was armed with his AK-47.

Defendant and Perry got out of the car and waited for Miller. Staton remained in the car.

About 12:40 a.m. on 18 January 2006, Miller drove up accompanied by Marcus Wilson (Wilson). As soon as Miller and Wilson got out of their car, defendant and Perry emerged from the shadows on a porch and began firing their assault rifles. Miller and Wilson ran behind some houses. Defendant chased them down, firing his assault rifle. The bodies of Miller and Wilson were found in a field approximately 100 yards behind the house. Each had six bullet wounds, mostly in the back. Defendant fired almost all of the thirty rounds in the clip for his MAK-90. Crime scene investigators found thirty-six shell casings, most of which were fired from defendant's weapon. Approximately eight casings were from another weapon. There were no weapons of any kind found upon or near Miller and Wilson. The entire melee lasted for about thirty seconds.

At trial, defendant testified that when Miller arrived, he observed a red light in Miller's car that seemed to be pointed at him. He also testified that he heard a shot. Defendant then began shooting at Miller and Wilson, chasing them, and ultimately killing them. He testified he was concerned that if he stopped shooting, Miller and Wilson would shoot him.

After the shootings, defendant voluntarily went to the police department the afternoon of 18 January 2006 for an interview. Defendant initially told police he had not met with Miller on the night of the shootings. He admitted to owning the MAK-90 but said it had been stolen. Defendant took police out to his vehicle and provided them with two items: a slip of paper with Miller's cell phone number written on it, and the receipt for the MAK-90. Defendant also consented to a search of his vehicle and his residence.

On 7 February 2006, defendant was arrested while attending class at Winston-Salem State University. Defendant's vehicle was locked and sitting in a parking lot. Police seized defendant's vehicle and obtained a search warrant on 9 February 2006.

During the course of the search, police seized a tan jacket from defendant's vehicle, which defendant wore on the night of the shootings. The jacket tested positive for gunshot residue. Police also seized a black notebook from the front floorboard of the vehicle. Detective Taylor testified that he could "make out" defendant's

first name and two phone numbers on the front of the notebook. Inside the notebook, police found rap lyrics defendant had written about the shootings. Defendant later admitted that he wrote the song.

On 22 January 2008, defendant filed a Motion to Suppress and Motion to Exclude Evidence of "Writings" dated "1-24-2006." The trial court denied defendant's motion and held that the search warrant was supported by probable cause, and after looking at the totality of the circumstances, "detectives did not need a search warrant to legally seize and subsequently search the defendant's vehicle on February 8, 2006, given that the search was incident to a valid arrest of the defendant and given the inherent mobility of the subject of the search...."

As to each murder charge, the trial court instructed the jury on first-degree murder under a theory of premeditation and deliberation, first-degree murder under a theory of lying in wait, second-degree murder, and not guilty. The trial court denied defendant's request for an instruction on voluntary manslaughter based on imperfect self-defense. Defendant was found guilty of each charge of first-degree murder under the theory of premeditation and deliberation. Defendant was sentenced to concurrent life sentences.

Bryant, 196 N.C. App. at 155-57, 674 S.E.2d at 754-55.

## Claims for Relief

In the first claim for relief, the Petition asserts that:

THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE LAW OF SELF-DEFENSE AND FAILING TO SUBMIT TO THE JURY A POSSIBLE VERDICT OF GUILTY OF VOLUNTARY MANSLAUGHTER BASED UPON IMPERFECT SELF DEFENSE AND THE STATE APPELLATE COURT'S DETERMINATION THAT ANY ERROR IN THAT REGARD WAS HARMLESS IN LIGHT OF THE JURY'S VERDICT IS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE UNITED STATES SUPREME COURT.

(Docket Entry 1, ¶ 14.)

The Petition's second claim for relief contends that:

THE TRIAL COURT ERRED BY ADMITTING "RAP LYRICS" CONTAINED IN A NOTEBOOK SEIZED PURSUANT TO A SEARCH WARRANT WHICH DID NOT SPECIFY SUCH POTENTIAL EVIDENCE AND THE STATE APPELLATE COURT'S DETERMINATION THAT THE EVIDENCE SEIZED WAS WITHIN THE SCOPE OF THE SEARCH WARRANT WAS BOTH

CONTRARY TO AND AN UNREASONABLE APPLICATION OF CLEARLY
ESTABLISHED FEDERAL LAW AS DETERMINED BY THE UNITED
STATES SUPREME COURT.

(Id. ¶ 16.)

## Discussion

### Claim One

Respondent argues that the Court should deny Petitioner's first claim for relief on grounds of non-exhaustion and procedural bar, see 28 U.S.C. § 2254(b)(1), and, alternatively, because it fails on the merits. (Docket Entry 5 at 5-12.)

As to the question of exhaustion and procedural bar, Respondent contends that Petitioner did not fully exhaust his state law remedies as to the manslaughter-verdict-option claim because he failed to raise that issue in his petition for discretionary review to the North Carolina Supreme Court. (Id. at 5-6.) In this regard, Respondent relies on O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999), where the United States Supreme Court ruled some of a petitioner's claims unexhausted and procedurally barred because he failed to present them in a petition for discretionary review to Illinois' highest court in the time allowed by Illinois law.

In response, Petitioner first cites language in O'Sullivan in which the United States Supreme Court recognized that, in Illinois, discretionary review was "'part of the ordinary appellate review procedure in the State.'" (Docket Entry 14 at 2 (quoting O'Sullivan, 526 U.S. at 847).) According to Petitioner, North Carolina allows appeal of right in more situations than does Illinois. (Id.) Petitioner therefore reasons that discretionary

-5-

review does not represent "part of the ordinary appellate review procedure" in North Carolina and that his failure to seek discretionary review of the manslaughter-verdict-option issue in the North Carolina Supreme Court does not render said claim unexhausted for purposes of Section 2254(b)(1). (Id. at 2-3.) This argument falls short for at least three reasons.

First, Petitioner cites neither case law nor language in O'Sullivan to support the view that a petitioner can satisfy the exhaustion requirement under Section 2254(b)(1) because the existence of some appeal-of-right provisions under state law (which the petitioner could not have invoked) relieved the petitioner of the duty to utilize the state's discretionary review procedures (which the petitioner could have invoked). (See id.) Nor has the undersigned United States Magistrate Judge located any such authority or basis in O'Sullivan.

Second, the habeas statute does not limit the exhaustion requirement in the manner Petitioner suggests: "Section 2254(c) provides that a habeas petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented.'" O'Sullivan, 526 U.S. at 844 (quoting 28 U.S.C. § 2254(c)) (ellipses in original) (emphasis added). Petitioner has not shown that a petition for discretionary review to the North Carolina Supreme Court following a direct appeal to the North Carolina Court of Appeals constitutes something other than "any available procedure" which he "ha[d] the

right under the law of the State to raise." (See Docket Entry 14 at 2-3.)[1]  Accordingly, Petitioner had an obligation to seek discretionary review in the North Carolina Supreme Court on direct appeal in order to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," id. at 845.

Third, the United States Court of Appeals for the Fourth Circuit has plainly stated that, to exhaust state remedies, a petitioner "must raise his claim before every available state court, including those courts . . . whose review is discretionary." Jones v. Sussex I State Prison, 591 F.3d 707, 713 (4th Cir. 2010) (citing O'Sullivan, 526 U.S. at 847)).  Consistent with that command, federal courts in North Carolina repeatedly have stated that North Carolina prisoners who rely on their pursuit of a direct appeal to satisfy the exhaustion requirement in Section 2254(b)(1) must have petitioned the North Carolina Supreme Court for discretionary review. See, e.g., Allen v. Herron, No. 5:10HC2045D, 2011 WL 744153, at *5-6 (E.D.N.C. Feb. 23, 2011) (unpublished), appeal dismissed, ___ Fed. Appx. ___, 2011 WL 3020484 (4th Cir. 2011); Crowe v. North Carolina, No. 1:10CV150-1-MU, 2010 WL 2925895, at *1 (W.D.N.C. July 23, 2010) (unpublished); Cupid v.

---

[1] The United States Supreme Court "ha[s] not interpreted the exhaustion doctrine to require prisoners to file repetitive petitions . . . [or] to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past." O'Sullivan, 526 U.S. at 844.  One petition for discretionary review on direct appeal, by definition, does not represent a "repetitive" petition.  Nor has Petitioner shown that the North Carolina Supreme Court previously has failed to provide relief via grants of discretionary review in connection with direct appeals.  (See Docket Entry 14 at 2-3.)

Jackson, No. 1:08CV430, 2009 WL 541411, at *2 (M.D.N.C. Mar. 4, 2009) (Dixon, M.J.) (unpublished), recommendation adopted, slip op. (M.D.N.C. Mar. 31, 2009) (Schroeder, J.); Perkins v. Harvey, 1:07CV955, 2008 WL 2570877, at *3 (M.D.N.C. June 23, 2008) (Eliason, M.J.) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 8, 2008) (Tilley, J.); Chapman v. Beck, No. 1:06CV179, 2007 WL 634087, at *1-2 (M.D.N.C. Feb. 26, 2007) (Beaty, C.J., adopting recommendation of Eliason, M.J.) (unpublished).

Petitioner next asserts that raising his claim in the North Carolina Supreme Court would have been futile because that court had already addressed the same issue in a prior case and ruled contrary to the argument he would have raised. (Docket Entry 14 at 3-4 (citing State v. Price, 344 N.C. 583, 590, 476 S.E.2d 317, 321 (1996)).) In support of this position, Petitioner cites Knight v. West Virginia, No. 91-6312, 981 F.2d 1251 (table), 1992 WL 385277 (4th Cir. Dec. 28, 1992) (unpublished). (Docket Entry 14 at 3.)

In said decision, the Fourth Circuit stated that, "when it is clear that the state court will refuse to entertain a habeas petitioner's claim, the prisoner need not exhaust his state remedies, because a prisoner is not required to exhaust a claim when seeking relief in the state courts would clearly be futile." Knight, 1992 WL 385277, at *1 (citing Teague v. Lane, 489 U.S. 288 (1989), Snethen v. Nix, 736 F.2d 1241, 1245 (8th Cir. 1984), and Wiley v. Sowders, 647 F.2d 642, 647 (6th Cir. 1981)). The Fourth Circuit then ruled that because "the West Virginia Supreme Court of Appeals ha[d] already dismissed [the petitioner's] case as moot

-8-

. . . it [wa]s clear that the West Virginia Supreme Court of Appeals would consider a subsequent habeas petition from [the petitioner] to be moot [and that] . . . requiring [him] to file a subsequent habeas petition [in the West Virginia Supreme Court of Appeals] would be futile.  Therefore, [the petitioner] must be excused from the exhaustion requirement." Id. (emphasis added).

Here, by contrast, the North Carolina Supreme Court never "dismissed [Petitioner's] case as moot," id., or for any other reason.  The Fourth Circuit's ruling in Knight, therefore, does not support the conclusion that the Court should excuse Petitioner's failure to petition the North Carolina Supreme Court for discretionary review of his manslaughter-verdict-option claim.  Nor do the decisions cited by the Knight Court as authority for a futility exception (i.e., Teague, Snethen, and Wiley) aid Petitioner's attempt to secure the benefit of said exception.

In the first of those cases, the United States Supreme Court held that the applicable state law made it "clear that collateral relief would be unavailable to [the] petitioner [on a particular claim and thus that] . . . [he] ha[d] exhausted his state remedies under 28 U.S.C. § 2254(b) with respect to [that] claim." Teague, 489 U.S. at 298.  Conversely, in this case, North Carolina law did not establish any such barrier to a grant of discretionary review by the North Carolina Supreme Court of Petitioner's manslaughter-verdict-option claim.  Teague thus does not permit the Court to excuse Petitioner's failure to petition the North Carolina Supreme Court for discretionary review of that claim on direct appeal.

The second opinion cited in <u>Knight</u> as authority for a futility exception to exhaustion under Section 2254(b) involved a situation in which a petitioner had attempted to raise two claims in an appeal arising from the state trial court's denial of post-conviction relief, but the Iowa Supreme Court had "refused to rule on them because [he] had not raised them below." <u>Snethen</u>, 736 F.2d at 1245. "The [federal] district court held, however, that the exhaustion requirement was satisfied because to return to the state courts at this juncture would be futile . . . [in light of] dicta in the Iowa Supreme Court opinion . . . [which] [t]he district court interpreted . . . [as declaring any error] harmless . . . ." <u>Id.</u> The United States Court of Appeals for the Eighth Circuit rejected that view and reiterated its position "'that only after some clear manifestation on the record that a state court will refuse to entertain [a] petitioner's claims will the exhaustion requirement be disregarded as futile.'" <u>Id.</u> (quoting <u>Powell v. Wyrick</u>, 657 F.2d 222, 224 (8th Cir. 1981)). Petitioner has not identified any "'clear manifestation on the record that [the North Carolina Supreme Court would have] refuse[d] to entertain [his instant] claim[],'" <u>id.</u>, and he thus has failed to show that "'the exhaustion requirement [should] be disregarded as futile,'" <u>id.</u>

The third decision on which the <u>Knight</u> Court relied in recognizing a futility exception to Section 2254(b)(1)'s exhaustion prerequisite concerned a case in which the petitioner's "ineffective counsel claim was first presented on direct appeal to the Kentucky Supreme Court . . . [which] ha[d], on occasion,

reviewed unpreserved error to prevent 'manifest injustice.'"
_Wiley_, 647 F.2d at 646-47.   In addition to "receiv[ing] the
parties' briefs which contained arguments on the ineffective
counsel issue . . ., the Kentucky Supreme Court took the unusual
step of gathering supplemental material relative to this claim
[including] . . . an amicus brief [from petitioner's trial counsel]
outlining and defending his trial strategy . . . [and] an affidavit
[from the trial judge] stating that in his opinion defense counsel
were competent and their trial strategy sound." _Id._ at 647.   Given
those circumstances, the United States Court of Appeals for the
Sixth Circuit ruled that, although the Kentucky Supreme Court
ultimately "declin[ed] to rule on the ineffective counsel claim
[by] stating that absent a post-trial motion, the claim was not
preserved . . . the issue of trial counsel's ineffectiveness was
'fairly' presented." _Id._   Moreover, the Sixth Circuit determined
that, because the trial judge "submitted an affidavit to the state
supreme court, . . . [the] [p]etitioner's remedy at the trial court
level was prejudiced and any further pursuit rendered futile." _Id._
"Accordingly, [the Sixth Circuit] conclude[d] that petitioner ha[d]
exhausted his state remedies with respect to his ineffective
counsel claim and that his claim [wa]s appropriately before [the
federal] court[s]." _Id._ at 648.   Plaintiff's case bears no
resemblance to the foregoing events and thus the futility exception
adopted in that case affords him no benefit.

    In sum, _Knight_ and the cases cited therein only permit a
finding of futility sufficient to excuse exhaustion under Section

2254(b)(1) where _either_ something in the record of the petitioner's case specifically indicates that the state court from whom the petitioner otherwise could seek relief will not consider the petitioner's claim _or_ the law of the state precludes any further review of the petitioner's claim.  Petitioner has not identified any such circumstances, but instead has predicated his futility argument on the likelihood that the North Carolina Supreme Court would have declined to review his manslaughter-verdict-option claim because it had ruled adversely to his position on that basic question in a prior case (_Price_) 13 years before Petitioner opted against seeking discretionary review. (_See_ Docket Entry 14 at 3-5.)

Although Petitioner did not cite them (_see_ _id._), research has revealed a number of cases (primarily from the 1960s and 1970s, but one decided on March 28, 1982) in which the Fourth Circuit construed the futility doctrine to excuse a petitioner's failure to exhaust state remedies "where there are decisions of the highest state court directly against the claim of the petitioner and there appears no indication that the state court is inclined to change its position." _Perry v. Blackledge_, 453 F.2d 856, 857 (4th Cir. 1971) (citing _Ralph v. Warden_, 438 F.2d 786, 788 n.1 (4th Cir. 1970), and _Evans v. Cunningham_, 335 F.2d 491, 493 (4th Cir. 1964)); _accord_ _Adkins v. Bordenkircher_, 674 F.2d 279, 281-82 (4th Cir. 1982), _overruled in part on other grounds_, _Meadows v. Holland_, 831 F.2d 493, 495-98 (4th Cir. 1987); _Franklin v. Conway_, 546 F.2d 579, 581 (4th Cir. 1976); _Ham v. North Carolina_, 471 F.2d 406, 407-08 (4th Cir. 1973); _Hayes v. Boslow_, 336 F.2d 31, 32 (4th Cir. 1964).

Those decisions, however, all predated the United States Supreme Court's decision (on April 5, 1982) in Engle v. Isaac, 456 U.S. 107 (1982). Other courts have recognized that, "[t]o answer the question whether the futility of a claim on the merits renders that claim exhausted, [courts should] begin with the Supreme Court's decision in Engle." Parker v. Kelcher, 429 F.3d 58, 62 (3d Cir. 2005) (internal citation omitted). "In [Engle], the [Supreme] Court addressed the question - analogous to the question presented in this case - whether a petitioner who had procedurally defaulted a claim in state court could prove 'cause' to excuse his default if his claim would have been futile on the merits in state court." Id. In ruling that a petitioner's perception that a state court likely would reject a challenge based on prior state precedent did not excuse the petitioner's failure to present the claim to the state court, the Supreme Court stated as follows: "If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid." Engle, 456 U.S. at 130 (emphasis added) (internal footnote omitted).

That determination by the United States Supreme Court forecloses Petitioner's futility argument in this case. See Parson v. San Quentin Prison Warden, 158 Fed. Appx. 814, 816 (9th Cir. 2005) ("[E]ven if the California Supreme Court has previously rejected the same federal constitutional challenges in other cases

involving different petitioners, Mr. Parson would still be required to exhaust his state remedies." (citing <u>Engle</u>)); <u>Parker</u>, 429 F.3d at 64 ("Allowing petitioners to bypass state court merely because they believe that their constitutional claims would have failed there on the merits would fly in the face of comity and would deprive state courts of a critical opportunity to examine and refine their constitutional jurisprudence." (citing <u>Engle</u>)); <u>Jones v. Keane</u>, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting <u>Engle</u>, as quoted in <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998), in ruling that Section 2254(b)(1)'s exhaustion requirement barred review despite "fact that the New York Court of Appeals may have been unlikely to grant [him] relief on [said] claim"); <u>White v. Peters</u>, 990 F.2d 338, 341-42 (7th Cir. 1993) ("Although futility is a recognized exception to the exhaustion of state remedies requirement, the pertinent question is not whether the state court would be inclined to rule in the petitioner's favor, but whether there is any available state procedure for determining the merits of petitioner's claim. Federal-state comity demands that a habeas petitioner first give the state courts an opportunity to pass on his federal claims, even if those courts would be expected to view such claims unfavorably." (internal citations omitted) (citing <u>Engle</u>)); <u>see also</u> <u>Padavich v. Thacker</u>, 162 F.3d 521, 522 (8th Cir. 1998) (noting its prior decisions excusing petitioners' failures "to exhaust state remedies when the state court has recently decided the same legal question adversely to the petitioner under nearly identical facts . . . [and] acknowledg[ing] the possible

inconsistency between [those holdings] and the Supreme Court's statement in Engle, [but] leav[ing] this issue for another day"); but see Fisher v. Texas, 169 F.3d 295, 303 (5th Cir. 1999) (holding "futility exception applies when, as here, the highest state court has recently decided the same legal question adversely to the petitioner," but without addressing Engle).[2]

Even if Engle did not preclude Petitioner's futility argument, the circumstances of this case fail to satisfy the futility exception as recognized by the Fourth Circuit prior to Engle, because said exception only applied where the highest state court rendered a decision adverse to the petitioner's position shortly before the petitioner failed to exhaust his state remedies. See, e.g., Evans, 335 F.2d at 493 ("It is true that this petitioner, Evans, is not the same petitioner whose identical contention the Supreme Court of Appeals of Virginia considered and decided in Sims v. Cunningham. The Sims case stands, however, as the authoritative and considered judgment of the Supreme Court of Appeals of Virginia. It was decided only two years ago as of this writing and was even younger than that when Evans filed his petition in the District Court. Since 1962 there has been no substantial change in the composition of Virginia's Supreme Court of Appeals, and there is no suggestion of any possible reason to suppose that that Court

---

[2] Although it does not appear that the Fourth Circuit has considered the import of Engle in relation to Section 2254(b)(1)'s exhaustion requirement, it has applied the relevant language from Engle beyond the procedural default context to reject the notion that adverse state case law could constitute an "impediment" to a petitioner's pursuit of a habeas claim within the meaning of 28 U.S.C. § 2244(d)(1)(B), which would provide a "valid justification for filing an untimely § 2254 petition." Minter v. Beck, 230 F.3d 663, 666 (4th Cir. 2000).

might reconsider its considered judgment in the recent Sims case."
(emphasis added)).[3]

In this case, the North Carolina Supreme Court issued the
<u>Price</u> decision (which Petitioner has identified as rendering
further litigation of his manslaughter-verdict-option claim before
that court futile (<u>see</u> Docket Entry 14 at 3-5)) in 1996, 13 years
before he filed his petition for discretionary review with the
North Carolina Supreme Court omitting said claim.  Simply put, the
13-year period between the issuance of <u>Price</u> and Petitioner's
decision to refrain from presenting his instant claim to the North
Carolina Supreme Court is too great to trigger any futility
exception, particularly given that a review of the biographies on
that Court's official website revealed that at least five of the
seven justices on the North Carolina Supreme Court as of 2009 began

---

[3] Two of the seven above-cited cases (<u>Ralph</u> and <u>Hayes</u>) in which the Fourth
Circuit approved application of the futility exception, <u>see</u> <u>supra</u>, p. 12, did not
reveal the length of time between the adverse state precedent and the
petitioner's decision to forego further state review, but, among the rest, only
one (<u>Franklin</u>) featured a gap exceeding three years and the time lapse in that
case (approximately nine years) fell well short of the 13-year span in this case.
An opinion handed down by the United States Court of Appeals for the Fifth
Circuit after its above-cited decision in <u>Fisher</u> excusing non-exhaustion based
on adverse state precedent, <u>see</u> <u>supra</u>, p. 15, also well makes the point that
courts must limit such exceptions to situations where little time has passed
between the prior state court ruling and the petitioner's failure to exhaust:

> [T]he adverse [state] precedent [that caused the <u>Fisher</u> Court to
> find exhaustion futile] occurred only . . . one year . . . before
> [that petitioner's] appeal involving the same issue.  On the other
> hand, [the prior state decision] on which [this petitioner] relies,
> was decided eight years before [his] state appeal.  In the light of
> this eight-year interval, the earlier quoted admonition in <u>Engle</u> is
> particularly appropriate:  "Even a state court that has previously
> rejected a constitutional argument may decide, upon reflection, that
> the contention is valid[.]"

<u>Lewis v. Cockrell</u>, No. 02-40985, 58 Fed. Appx. 596 (table), 2003 WL 261847, at
*5 (5th Cir. Jan. 22, 2003) (unpublished) (quoting <u>Engle</u>, 456 U.S. at 130).

serving there after 1996, <u>see</u> www.nccourts.org/Courts/Appellate/
Supreme/Biographies/Seating.asp (last visited Oct. 5, 2011). <u>See</u>
<u>Evans</u>, 335 F.2d at 493 (emphasizing that "there ha[d] been no
substantial change in the composition of Virginia's Supreme Court
of Appeals" during the two-year period since the decision adverse
to petitioner's position). Moreover, <u>Price</u> predates by six years
the principal decision, <u>Taylor v. Withrow</u>, 288 F.3d 846 (6th Cir.
2002), on which Petitioner relies in arguing that the United States
Constitution entitles him to relief (<u>see</u> Docket Entry 14 at 10-12).
Concerns of comity dictate that the North Carolina Supreme Court
should have had an opportunity to reconsider <u>Price</u> in light of
subsequent federal precedent that Petitioner now asks this Court to
follow for the purpose of declaring <u>Price</u> wrongly decided.

Petitioner's futility argument lacks merit and his failure to
qualify for any futility exception makes his first claim for relief
unexhausted. Petitioner requests that, if the Court reaches such
a conclusion, it then stay this case to allow him to return to
state court to exhaust the claim. (Docket Entry 14 at 5.) The
Court need not take such action because, if Petitioner went back to
the state courts, he would find his claim procedurally barred by
N.C. Gen. Stat. § 15A-1419 because he could have raised it in his
previous petition for discretionary review, but did not. That
consideration renders his claim procedurally barred from
consideration in this Court. <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 848.

A second reason exists not to prolong this action with a stay:
even if the Court considered Petitioner's claim on its merits, it

should grant him no relief.  Where a petitioner's claim was adjudicated by the state courts on its merits, this Court must apply 28 U.S.C. § 2254(d), which precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was "contrary to" or involved an "unreasonable" application of clearly established federal law as set out by the United States Supreme Court <u>or</u> the state court decision was based on an "unreasonable" determination of the facts.  A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 406 (2000).  A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407.  "Unreasonable" is not the same as "incorrect" or "erroneous" and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint.  <u>Id.</u> at 409-11. Moreover, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Here, Petitioner correctly and candidly states that:

> Neither the Supreme Court of the United States nor the
> United States Court of Appeals for the Fourth Circuit has
> examined the issue of whether due process rights are

> violated to the extent required to justify habeas review
> when a timely request, supported by competent evidence,
> is made for instructions on self-defense both as an
> absolute defense and as a partial defense requiring the
> submission of the lesser-included offense of Voluntary
> Manslaughter in a non-capital murder case.

(Docket Entry 14 at 11-12.) This fact does not categorically rule out the possibility of habeas relief, but it requires Petitioner to show that the North Carolina courts "either unreasonably extend[ed] a legal principle from [United States Supreme Court] precedent to a new context where it should not apply or unreasonably refuse[d] to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407. Petitioner cannot make that showing.

In Beck v. Alabama, 447 U.S. 625, 637 (1980), the United States Supreme Court noted that it had "never held that a defendant is entitled to a lesser included offense instruction as a matter of due process." Both prior to and following Beck, the federal courts of appeals have disagreed about whether or when a failure to give a lesser included offense instruction violates due process. See Tata v. Carver, 917 F.2d 670, 671-72 (1st Cir. 1990) (citing and discussing cases). To show his right to relief, Petitioner relies principally on Taylor, 288 F.2d at 851, where the United States Court of Appeals for the Sixth Circuit recognized a fundamental right to assert self-defense and ruled "that failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause." (See Docket Entry 14 at 10-12.) In so ruling, the Sixth Circuit

concluded that this right existed as a "necessary corollary" to a defendant's right to a "'meaningful opportunity to present a complete defense.'" Id. (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  It also noted that other courts had reached similar conclusions and determined that the rule was sufficiently clearly established that habeas relief might follow if state courts violated it.  Id. at 852.

Even if the Court agreed with the general proposition that due process requires a lesser included offense instruction in some instances, the various rules enunciated around the country and discussed in Tata foreclose any conclusion that such a rule is "clearly established" by United States Supreme Court precedent. Moreover, applying that rule in this case would contravene the United States Supreme Court's statement that, except in very limited circumstances (absent here), "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure," Teague, 489 U.S. at 316.  See Leary v. Garraghty, 155 F. Supp. 2d 568, 574 & n.2 (E.D. Va. 2001) (citing Robinson v. North Carolina Attorney General, No. 99-7530, 238 F.3d 414 (table), 2000 WL 1793060 (4th Cir. Dec. 7, 2000) (unpublished)).  In summary, the United States Supreme Court has never announced the rule that Petitioner seeks to invoke, lower court disagreement demonstrates that the rule is not "clearly established" by United States Supreme Court precedent, and Teague bars application of the rule in this context.  All these reasons require the Court to reject Petitioner's first claim.

As a final matter, the North Carolina Court of Appeals never took the position that the United States Constitution fails to afford a defendant the right to a lesser included offense instruction if the evidence supported the instruction. Instead, it denied Petitioner's claim by citing Price for the proposition that, where (as in Petitioner's case) a jury that had a choice between first-degree murder by premeditation and deliberation, second-degree murder, and not guilty convicts the defendant of first-degree murder, the failure to afford the jury an otherwise warranted manslaughter-verdict-option constitutes harmless error. Bryant, 196 N.C. App. at 157-58. Price, in turn, relied on two rationales for this rule. First, in finding a defendant guilty of murder by premeditation and deliberation, the jury necessarily rejected beyond a reasonable doubt defense theories that would support manslaughter, including imperfect self-defense. Price, 344 N.C. at 590. Second, a first-degree murder verdict in these circumstances rules out the possibility that the jury convicted the defendant of first-degree murder simply to avoid letting him go free, because they rejected the lesser verdict of second-degree murder. Id. at 591-92. Petitioner points to no United States Supreme Court case law that contradicts these rationales.

More importantly, as set out in Price, Schad v. Arizona, 501 U.S. 624 (1991), which also involved a jury verdict convicting a defendant of first-degree murder after receiving instruction on second-degree murder and acquittal, supports Price's second rationale. In Schad, the defendant, who was caught in possession

of the deceased's car and property, presented a defense at trial that he had only robbed, but not killed, the deceased. He argued that the jury should have had the option of convicting him of only robbery and maintained that the failure to instruct the jury in that fashion may have coerced the jury into convicting him of murder given that it could not convict him of robbery. The Supreme Court rejected this theory by noting that, if the jury wished to convict the defendant of a lesser crime than first-degree murder, it could have convicted him of second-degree murder. Id. at 646-48. Therefore, the established precedent of the United States Supreme Court on this critical point actually supports the rule adopted in Price and applied in Petitioner's case.

In the end, Petitioner's first claim for relief is procedurally barred. Alternatively, he has not shown that either the absence of a manslaughter-verdict-option or the determination by the state courts that a failure to instruct the jury in that manner amounted to harmless error was contrary to, or an unreasonable application of, established United States Supreme Court precedent. The Court therefore should deny Petitioner's first claim for relief.

**Claim Two**

Petitioner's second claim for relief alleges that the trial court erred in admitting rap lyrics contained in a notebook found during a search of Petitioner's car, which law enforcement officials seized and then searched pursuant to a warrant procured after Petitioner's arrest. (Docket Entry 1, ¶ 17.) Petitioner

-22-

filed a pretrial motion to suppress arguing that the contents of the notebook fell outside the scope of the warrant, but the state court denied that motion and admitted the lyrics at trial. (Id.) Petitioner also raised, but lost, this point on direct appeal. Bryant, 674 S.E.2d at 756.

The United States Supreme Court has ruled habeas corpus relief unavailable for challenges of this sort "where the State has provided an opportunity for full and fair litigation of [the] Fourth Amendment claim." Stone v. Powell, 428 U.S. 465, 482 (1976). Here, Petitioner not only had a full and fair opportunity to contest his claim in the state courts, but did so at both the trial and appellate levels. The claim should be denied because the Court cannot consider it under the rule in Stone.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted, that Petitioner's Motion for Summary Judgment (Docket Entry 10) be denied, that the Habeas Petition (Docket Entry 1) be denied, and that Judgment be entered dismissing this action.

                    /s/ L. Patrick Auld
                    **L. Patrick Auld**
              **United States Magistrate Judge**

October 6, 2011